# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

CANAL INDEMNITY COMPANY,

      Plaintiff,

v.                                                              Case No: 6:11-cv-2001-Orl-36DAB

MARGARETVILLE OF NSB, INC., MARGARET
JAN WALKER, MARGARET JAN WALKER,
TROVILLION CONSTRUCTION &
DEVELOPMENT, INC., DAO CONSULTANTS,
INC. and BAD LANDS EXCAVATING, INC.,

      Defendants.
_____/

## ORDER

This cause comes before the Court upon three motions for summary judgment. On December 28, 2012, Defendants Margaretville of NSB, Inc., Margaret Jan Walker, Trustee, and Margaret Jan WalkerTrust (collectively, "the Walker Defendants"), filed a Motion for Summary Judgment ("Walker MSJ") (Doc. 75). On December 31, 3012, Defendant Dao Consultants, Inc. ("Defendant Dao") filed a Motion for Summary Judgment on Counts I and II of Plaintiff's Amended Complaint ("Dao MSJ") (Doc. 82). On December 31, 2012, Plaintiff Canal Indemnity Company ("Plaintiff") filed a Motion for Summary Judgment ("Plaintiff's MSJ"). Responses and replies have been filed in support of and in opposition to the motions for summary judgment. *See* Docs 86, 88, 90, 91, 94, 96, and 97.

On May 30, 2013, the Court held a hearing on the Walker MSJ, Dao MSJ, and Plaintiff's MSJ. *See* Doc. 105. Upon consideration of the parties' submissions and statements, the relevant statutory and case law, and for the reasons that follow, the Court will grant, in part, Plaintiff's MSJ, and deny the Walker MSJ and Dao MSJ as moot.

## I. BACKGROUND

### A. Summary of the action

Plaintiff filed this declaratory judgment action for the purpose of disclaiming its obligations under a policy of general liability insurance that it issued to Defendant Bad Lands Excavating, Inc. ("Bad Lands"), a construction subcontracting company owned by Lloyd Scheffler ("Scheffler"). In its First Amended Complaint, Plaintiff seeks: (I) a declaration that the policy of liability insurance it issued to Bad Lands does not provide insurance coverage to Bad Lands, for either defense or indemnity, in regard to an underlying negligence lawsuit which the Walker Defendants filed against Bad Lands, and others, in state court ("Underlying Case").[1] Doc. 62, ¶¶ 31-34; and (II) a declaration that Plaintiff is entitled to rescind the liability policy it issued to Bad Lands pursuant to the rescission remedy provided in Florida Statute § 627.409, based upon its contention that Scheffler made material misrepresentations on Bad Lands' application for insurance. *Id.* at ¶¶ 35-36.

### B. Undisputed Material Facts[2]

Plaintiff is a surplus lines carrier,[3] and a South Carolina Corporation whose principal place of business is in South Carolina. Doc. 89, ¶ 8; Doc. 62, p. 2. Plaintiff issued a Commercial General Liability policy, number GL93746, to Bad Lands ("CGL Policy"). *Id.* at ¶ 9. The CGL Policy contains a Special Exclusion Endorsement, which limits coverage to those operations that are classified and shown on the Commercial General Liability Coverage

---

[1] The Underlying Case is *Margaretville of NSB, Inc. et al. v. Trovillion Construction & Development, Inc. et al*, Case No. 10-CA 008244, Ninth Judicial Circuit, Orange County, Florida. Plaintiff attached the Fourth Amended Complaint in that case to its First Amended Complaint in the instant action. *See* Doc. 62-Ex. 1.
[2] The undisputed facts are taken from the Parties' Stipulation of Agreed Material Fact (Doc. 89).
[3] Plaintiff's authorization to conduct business in Florida is limited to the issuance of Surplus Lines Property and Casualty insurance policies, pursuant to *Fla Stat.* § 626.924(1).

Declarations, its endorsements, and supplements. *Id.* at ¶ 10. The CGL Policy contains the following exclusion: Exclusion – Explosion, Collapse and Underground Property Damage Hazard (Special Operations), ISO Form CG2140196 ("Underground Property Damage Exclusion"). *Id.* at ¶ 12; Doc. 62-Ex. 2, p. 35.

On August 23, 2006, Scheffler signed the General Liability Application on behalf of Bad Lands. *Id.*, ¶ 1; *see* Doc. 62-Ex. 3. Plaintiff relied on Bad Lands to disclose all operations it performed for which it was seeking coverage in the General Liability Application. *Id.* ¶ 6. The only operation listed in the General Liability Application for which coverage was sought by Bad Lands is "Grading of Land – INCL. Borrowing, Filling or Back Filling" under Classification Code No. 95410. *Id.* ¶ 2; Doc. 62-Ex. 3, No. 17. The only operation listed in the Coverage Part Declarations of the Subject Policy is "Grading of Land – INCL. Borrowing, Filling or Back Filling" under Classification Code 95410. *Id.* ¶ 3; Doc. 62-Ex. 2, p. 2. The CGL Policy Declarations show the premium amount to be $936.28. *Id.* ¶ 4; Doc 62-Ex. 2.

Plaintiff received notice of the underlying lawsuit, and the allegations asserted against Bad Lands on May 18, 2010. *Id.* at ¶ 13. Plaintiff did not attempt to rescind the Policy until it filed an action for declaratory relief. *Id.* at ¶ 14. Plaintiff has not refunded any insurance premium to Bad Lands.

**II.   STANDARD**

Summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary

judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (emphasis in original). A fact is "material" if it may affect the outcome of the suit under governing law. *Id.* at 248.

The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).

### III. ANALYSIS

#### A. Plaintiff's Duty to Defend

First, the Court examines whether Plaintiff has a duty to defend the Underlying Case. In Florida, it is well established that an insurer's duty to defend a legal action against its insured arises when the complaint alleges facts that fairly bring the suit within policy coverage. *Jones v. Fla. Ins. Guaranty Assoc., Inc.*, 908 So. 2d 435, 443 (Fla. 2005); *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1077 n.3 (Fla. 1998).

Here, Plaintiff argues that the CGL Policy does not cover Bad Lands for claims arising out of sheet piling activities. Doc. 80, p. 7. In the Underlying Case, Bad Lands has been sued by the Walker Defendants in negligence for "installing sheet pilings so as to cause damage to Plaintiff's property." *See* Doc. 62-Ex. 1, ¶ 24. The sheet pilings were installed during construction of a condominium project adjacent to the Walker Defendants' property. Also, more

generally, Bad Lands is accused of breaching its "duty not to engage in activities which would cause damage to Plaintiffs' property." *Id.* at ¶ 23. The CGL Policy Declarations identify one operation classification for which coverage exists: "Grading of Land –INCL. Borrowing, Filling or Back Filling." *See* Doc. 62-Ex. 2, p. 2. Plaintiff explains that pursuant to the contract interpretation doctrine of *expressio unius est exclusio alterius*, the expression of one term implies the exclusion of others not mentioned. Doc. 80, p. 8; *see City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000). Accordingly, Plaintiff argues that because there is only one classification listed, installing sheet pilings is intentionally excluded from the CGL Policy's coverage. Referring to the *Merriam-Webster* dictionary, Plaintiff explains that to "grade," in this context means "to level off a smooth horizontal or sleeping surface." Doc. 80, p. 10 (citing *Merriam-Webster* Online Dictionary 2012)). In contrast, a "pile" is a "long slender column usually of timber, steel or reinforced concrete driven into the grown to carry a vertical load" and "Pile Driver" is defined as "a machine for driving down piles with a drop hammer or a steam or air hammer." *Id.* In its MSJ and at oral argument, Plaintiff insisted that no reasonable interpretation of "grading" would contemplate driving columns into the ground, such as is done in pile driving. *Id.*

In their Motion for Summary Judgment, the Walker Defendants agree that the issue is whether the allegations of negligence against Bad Lands in the Underlying Case fall within the CGL Policy. Doc. 75, p. 21. Contrary to Plaintiff's position, however, the Walker Defendants argue that the allegations do fall within the coverage contemplated. *Id.* First, the Walker Defendants note that where, as here, the insurer is seeking to avoid coverage based upon a condition contained in a policy, the insurer "has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no

5

other reasonable interpretation." *Castillo v. State Farm Fla. Ins. Co.*, 971 So. 2d 820, 824 (Fla. 3d DCA 2007). Second, the Walker Defendants explain that any doubts regarding an insurer's duty must be resolved in favor of the insured. *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 814 (Fla. 1st DCA 1985). Third, they maintain that exclusionary provisions must be interpreted narrowly against the insurer. Doc. 75, p. 14 (citing *Psychiatric Associates v. St. Paul Fire & Marine Ins. Co.*, 647 So. 2d 134 (Fla. 1st DCA 1994)).

Next, applying these principles to the disputed coverage, the Walker Defendants argue that the CGL Policy covers the "occurrence" — an accident in which Bad Lands' installation of sheet piling at The Wave project adjacent to the Walker property — causing "property damage" to the Walkers property. Doc. 75, p. 11; *see* Doc. 62-Ex. 2. While conceding that the coverage extends to Bad Lands' "operations" classified as "Grading of Land –INCL. Borrowing, Filling or Back Filling," the Walker Defendants argue that because Plaintiff never defined "operations" in the CGL Policy, it is precluded from applying a narrow interpretation of the coverage classification. *Id.* at 12 (citing *State Farm Fire*, 720 So. 2d at 1077). Similarly, the Walker Defendants argue that because the CGL Policy does not internally define the terms "Grading of Land," "Borrowing," "Filling" or "Back Filling," which appear in the classification, they must be broadly interpreted. Doc. 75, p. 14.

In addition to joining the Walker Defendants' contract interpretation arguments, Defendant Dao maintains that if there were no coverage for excavation under the CGL Policy, there would be no need to explicitly exclude "Underground Property Damage" from recovery. Doc. 82, p. 13; *see* Doc. 1-Ex. 2, p. 35. Similarly, the Walker Defendants maintain, in opposition to Plaintiff's MSJ, that Plaintiff cannot identify through an exclusion which

6

operations are covered, especially without clearly defining the terms in the classification. Doc. 91, p. 7.

It is axiomatic that the interpretation of a contract is a question of law for the court. *Peacock Const. Co., Inc. v. Modern Air Conditioning, Inc.*, 353 So.2d 840, 842 (Fla. 1977). Insurance contracts are construed according to their plain meanings, with any ambiguities construed against the insurer and in favor of coverage. *U.S. Fire Insurance comp. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 1977). However, whether an ambiguity exists is a question of law for the Court, and just because parties ascribe different language to a term does not make a term ambiguous. *See Smith v. Shelton*, 970 So. 2d 450, 451 (Fla. 4th DCA 2007); *Phila. Am. Life Ins. Co. v. Buckles*, 350 Fed. Appx. 376, 379 (11th Cir. 2009).

Here, the Court finds that the language of the CGL Policy classification is unambiguous and does not cover the allegations in the Underlying Case. Courts may consult dictionaries in order to ascertain the plain meaning of words in a contract to determine if an ambiguity exists. *Garcia v. Federal Ins. Co.,* 969 So.2d 288, 291-92 (Fla. 2007). Indeed, the plain meaning of the sole classification covered, "Grading of Land – INCL, Borrowing, Filling or Back Filling," does not contemplate sheet piling. In this context, "to grade" means "to level off to a smooth horizontal or sloping surface." *See* Merriam-Webster Dictionary 2012, (available at: http://www.merriam-webster.com/dictionary/grade). The Court agrees with Plaintiff that no reasonable interpretation of these terms would assume that the smoothing or leveling off of a surface encompasses the driving of columns, or sheet piles, into the ground. Doc. 80, p. 10. Second, the Special Exclusion Endorsement unambiguously limits coverage to the sole classification shown on the declaration. *See* Doc. 1-Ex. 2, p. 26 ("This insurance applies to 'bodily injury', 'property damage', 'personal injury', advertising injury" or medical expense

7

arising out of only those operations which are classified and shown on the Commercial General Liability Coverage Declarations, its endorsements, and supplements."). Under Florida law, "[c]learly worded exclusions in an insurance policy are to be enforced as long as they are clear, unambiguous and do not violate public policy." *Am. Equity Ins. Co. v. Van Ginhoven*, 788 S. 2d 388, 390 (Fla. 5th DCA 2001). Third, Defendant Dao's argument that there would be no need to exclude coverage for "underground property damage hazard," if the CGL Policy did not cover sheet piling activities, is unpersuasive. Doc. 82, p. 13; *see* Doc. 1-Ex. 2, p. 35. At oral argument, Plaintiff explained that this was a routine, boiler plate exclusion. More importantly, however, Defendants cannot generate ambiguity with the circular argument that a particular exclusion would not be needed but for coverage of that activity. Fourth, the Walker Defendants' contention during oral argument that the allegations in the Underlying Case are broad enough to be covered by this classification, is unpersuasive. Although Bad Lands is accused broadly of breaching its "duty not to engage in activities which would cause damage to Plaintiffs' property," this general accusation will not serve to include sheet piling in Plaintiff's duty to defend when the CGL Policy clearly does not provide coverage. *See* Doc. 62-Ex. 1, ¶ 23.

Accordingly, the Court finds that the CGL Policy does not cover Bad Lands' sheet piling activities at issue in the Underlying Case, and thus Plaintiff has no duty to defend. *See State Farm*, 720 So. 2d at 1077. If there is no duty to defend, there is no duty to indemnify. *Fun Spree Vacations v. Orion Ins. Co*., 659 So.2d 419, 422 (Fla. 3d DCA 1995).Accordingly, the Court need not examine extrinsic evidence, such as Bad Lands' application for insurance policy, or affidavits of individuals, to interpret a contract which is unambiguous. *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 405 (11th Cir. 1989).

### B. Availability of Florida Statute Section 627.409

In Count II, Plaintiff seeks to rescind the CGL Policy it issued to Bad Lands pursuant to the remedy provided in Florida Statute § 627.409, based upon Plaintiff's contention that Scheffler made material misrepresentations on Bad Lands' application for insurance. Doc. 1 at ¶¶ 35-36. Given the Court's finding that the CGL Policy does not cover the allegations of the Underlying Case, it need not determine whether Plaintiff is entitled to statutory rescission. However, because Plaintiff moved for summary judgment on Count II, the Court will address this issue. Defendant Dao and the Walker Defendants insist that the remedy of rescission under section 627.409 is not available to surplus lines insurers, such as Plaintiff.[4] *See* Doc. 82, pp. 7-9; Doc. 75, pp. 6-8. Plaintiff contends that this statutory remedy is available. Doc. 86, pp. 7-9.

Specifically, the parties dispute the significance of *Aspen Specialty Insurance Company v. River Oaks of Palm Beach Homeowner's Association*, 2012 WL 3260398 (S.D. Fla. 2012). In *Aspen*, the Court states that section 627.409(1) is inapplicable to surplus lines carriers. 2012 WL 3260398, * 3. Indeed, the *Aspen* Court explains that Florida's Surplus Lines Law regulates surplus lines insurers operating in Florida, and provides that "[e]xcept as may be specifically stated to apply to surplus lines insurers, the provisions of Chapter 627 do not apply to surplus lines insurance authorized under … Surplus Lines Law." *See* Fla. Stat. § 626.913(4).[5] Accordingly, both Defendant Dao and the Walker Defendants argue that because section

---

[4] During the hearing on the pending Motions for Summary Judgment, the Court clarified that Count II seeks rescission of a contract Plaintiff has with Bad Lands, and the Defendants are not named in that Count. Further, the Court noted that because the CGL Policy is between Plaintiff and Bad Lands, it is unclear what standing the Defendants have to argue regarding the contract remedies available. *See* Doc. 105.

[5] The *Aspen* court then considered whether the insurer could rescind the policy pursuant to a fraud provision in the insured's policy. *See* 2012 WL 3260398. Here, the CGL Policy does not have a fraud clause, and there is no allegation that Bad Lands made any intentional misrepresentations in its insurance application. *See* Doc. 82, pp. 10-11, n.5.

627.409(1) does not specifically state that it applies to surplus lines insurers, Plaintiff cannot rely on that section to rescind the CGL Policy to Bad Lands.[6]  *See* Doc. 82, p. 11; Doc. 75, pp. 7-8.

In its Response, Plaintiff concedes that the *Aspen* court notes that section 627.409(1) does not, on its face, apply to surplus lines insurers, and suggests that the basis for whether rescission is proper for a surplus lines carrier is the Surplus Lines Law, Fla. Stat. § 626.913-937.  Doc. 86, p. 7; *see Aspen*, 2012 WL 3260398 * 3.  However, Plaintiff insists that section 627.409 is applicable to surplus line carriers because it is contemplated by the Surplus Lines Law and its application is consistent with the legislative intent behind the statutes.  *Id.*  Specifically, Plaintiff argues that the Florida Surplus Lines Law states that insurance contracts such as the CGL Policy at issue are to be fully valid to the same extent as like contracts issued by authorized insurers, which would logically include the remedy of rescission under Fla. Stat.§ 627.409. *Id.* at 8.

Upon review, the Court notes that Plaintiff's argument about why the section 627.409(1) remedy should be available for surplus lines carriers, is unsupported by any precedent.  Indeed, both *Aspen* and the statutory language of the Florida Surplus Line Law indicate that section 627.409(1) is not applicable.  *See Aspen,* 2012 WL 3260398, * 3; Fla. Stat. § 626.913(2).[7]  Second, Florida's Surplus Line Law is clearly intended to regulate surplus lines insurers in Florida, and unambiguously states that except where explicitly provided, the provisions of

---

[6] Moreover, the Walker Defendants add that to the extent that Count I of Plaintiff's First Amended Complaint is based upon its contentions that Fla. Stat. § 627.409 relieves it of its duties to defend and indemnity Bad Lands in the underlying lawsuit, Plaintiff is not entitled to such relief since the statute is inapplicable to surplus lines carriers.  Doc. 75, pp. 84-85.

[7] "It is declared that the purposes of the Surplus Lines Law are to provide orderly access for the insuring public of this state to insurers not authorized to transact insurance in this state, through only qualified, licensed, and supervised surplus lines agents resident in this state, for insurance coverages and to the extent thereof not procurable from authorized insurers; to protect such authorized insurers, who under the laws of this state must meet certain standards as to policy forms and rates, from unwarranted competition by unauthorized insurers who, in the absence of this law, would not be subject to similar requirements; and for other purposes as set forth in this Surplus Lines Law."

Chapter 627 do not apply to surplus lines insurers.  Fla. Stat. § 626.913(4).  Third, the Court agrees with the Walker Defendants that Plaintiff's policy based analysis is unpersuasive.  *See* Doc. 94, p. 7.  Plaintiff's argument—that if the remedy of statutory rescission under Fla. Stat. § 627.409 were unavailable to surplus lines insurers, this would "allow potential insureds to make material misrepresentations in order to procure insurance coverage" —is unpersuasive.  *See* Doc. 86, p. 8.  Surplus lines carriers, such as Plaintiff, are still entitled to common law rescission remedies.  Therefore, the Court finds that rescission pursuant to Fla. Stat. § 627.409 is unavailable, and Plaintiff is not entitled to summary judgment on Count II of the Complaint.

Accordingly, it is hereby **ORDERED and ADJUDGED**:

1. Plaintiff Canal Indemnity Company's Motion for Summary Judgment (Doc. 80) is **GRANTED in part.**  The CGL Policy does not cover Bad Lines' sheet piling activities at issue in the Underlying Case. Therefore, Plaintiff has no duty to defend and no duty to indemnify.  As no genuine issues of material fact exist, Plaintiff is entitled to summary judgment on Count I of the Complaint**.** The Court will enter a Declaratory Judgment in favor of Plaintiff Canal Indemnity Company by separate order.

2. Defendant Dao Consultants, Inc.'s Motion for Summary Judgment on Counts I and II of Plaintiff's Amended Complaint (Doc. 82) is **DENIED as moot**.

3. Defendants Margaretville of NSB, Inc., Margaret Jan Walker, Trustee, and Margaret Jan WalkerTrust's Motion for Summary Judgment (Doc. 75) is **DENIED as moot**.

**DONE** and **ORDERED** in Orlando, Florida on July 3, 2013.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

**Copies furnished to:**
Counsel of Record
Unrepresented Parties